# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 5, 2015 Session

## STATE OF TENNESSEE v. TERRENCE JUSTIN FEASTER

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 97484     Jon Kerry Blackwood, Senior Judge**

---

**No. E2012-02636-SC-R11-CD – Filed June 25, 2015**

---

The defendant was convicted of attempted voluntary manslaughter, aggravated assault, and false imprisonment. After determining that the separate convictions for attempted voluntary manslaughter and aggravated assault did not violate double jeopardy, the trial court imposed consecutive sentences totaling twenty-six years, eleven months, and twenty-nine days. A divided panel of the Court of Criminal Appeals affirmed, finding no double jeopardy violation. This Court granted the defendant's application for permission to appeal to determine whether due process safeguards prohibit the retroactive application of the double jeopardy standard adopted in State v. Watkins, 362 S.W.3d 530 (Tenn. 2012), which was decided after the date of his offenses. The defendant argues that the former double jeopardy standard set out in State v. Denton, 938 S.W.2d 373 (Tenn. 1996), should apply. Because our ruling in Watkins cannot be classified as "unexpected" or "indefensible" by reference to prior law, due process does not preclude its retroactive application. The judgment of the Court of Criminal Appeals is affirmed.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed

GARY R. WADE, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and CORNELIA A. CLARK, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Stephen Ross Johnson, Knoxville, Tennessee, for the appellant, Terrence Justin Feaster.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; John H. Bledsoe, Senior Counsel; Randall E. Nichols, District Attorney General; and Leslie Nassios and Federico Flores, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION
## I. Facts and Procedural History

In the early morning hours of May 27, 2010, Molly Kate McWhirter (the "victim") was seriously injured during an altercation with Terrence Justin Feaster (the "Defendant") at her Knoxville residence. Several weeks later, the Defendant was apprehended in South Carolina. Thereafter, he was extradited to Tennessee and indicted on one count of attempted first degree murder, one count of aggravated assault, two counts of especially aggravated kidnapping, and one count of aggravated robbery.

At trial, the State's proof established that the Defendant had been living at the victim's residence for approximately two weeks before she drove him to a sports bar on the night of May 26, 2010. After an hour or so, the Defendant became "really drunk," and so the victim drove him back to her residence. According to the victim, when she went to her bathroom, the Defendant broke through the door and "just started beating [her]." She testified that he then dragged her into the bedroom, where he tied her feet to an entertainment center and threatened to kill her if she moved. The victim recalled that she momentarily lost consciousness, and when she awoke, she was able to free herself and run to the residence of a neighbor, who called 911. The police officers who responded to the scene found significant amounts of blood in the bathroom, bedroom, dining room, and living room.

After being transported by ambulance to a hospital, the victim remained unconscious for the next three days. Dr. William Snyder Jr., the victim's treating neurosurgeon, diagnosed a temporal skull fracture, a dislocation of the jaw, several lacerations on the forehead and scalp, nasal fractures, bilateral pulmonary contusions, and soft-tissue injuries to the arms. When the victim returned home, she found that several of her possessions were missing—jewelry, cash, clothing, a computer, and her purse and its contents. The victim denied that she and the Defendant had argued prior to the assault or that she had threatened him with a gun.

The Defendant testified that he and the victim met a man called "D" at the bar. When the victim left the bar with "D," the Defendant followed her outside and found her "kissing on" him. The Defendant claimed that he became so angry and embarrassed that he began walking home. He contended that the victim followed, driving his vehicle, and persuaded him to get inside. He recalled that they began to argue and, after they arrived at the victim's residence, she initiated the altercation with two or three punches to his face. According to the Defendant, when he retaliated by hitting her in the nose, the victim pointed a pistol in his direction. He asserted that he "grabbed the pistol from her," and when she continued to attack him, he used it to strike her in the head, eventually knocking her to the bathroom floor.

-2-

The Defendant claimed that the victim then asked him to remove all the drugs and guns from the property and to call 911. The Defendant maintained that he drove to the residence of a friend, who agreed to call 911 but refused to accept the drugs and two guns that he had brought with him. The Defendant contended that he had initially intended to visit the victim at the hospital, but decided instead to drive to Myrtle Beach, South Carolina, where he was scheduled to perform at a concert. The Defendant denied taking any property from the victim other than the drugs and guns.

The jury convicted the Defendant of attempted voluntary manslaughter, as a lesser included offense of attempted first degree murder; aggravated assault; and one count of false imprisonment, as a lesser included offense of especially aggravated kidnapping. He was acquitted of the aggravated robbery charge and one of the two counts of especially aggravated kidnapping. The trial court declined to merge any of the convictions and imposed consecutive sentences of twelve years for the attempted voluntary manslaughter, fourteen years for the aggravated assault, and eleven months and twenty-nine days for the false imprisonment.

A divided panel of the Court of Criminal Appeals affirmed the convictions and sentences. State v. Feaster, No. E2012-02636-CCA-R3-CD, 2014 WL 2170096, at *14 (Tenn. Crim. App. May 23, 2014). Dissenting in part, Judge Joseph M. Tipton concluded that the trial court should have merged the convictions for attempted voluntary manslaughter and aggravated assault pursuant to the double jeopardy principles set forth in State v. Denton, 938 S.W.2d 373, 378-81 (Tenn. 1996), which was in effect at the time of the offenses but was later overruled by this Court in State v. Watkins, 362 S.W.3d 530, 556 (Tenn. 2012). Feaster, 2014 WL 2170096, at *14 (Tipton, P.J., concurring in part and dissenting in part). We granted review to determine whether Watkins may be applied retroactively.

## II. Standard of Review

This appeal involves a question of constitutional interpretation, which we review de novo, affording no presumption of correctness to the conclusions of the trial court. State v. Crank, No. E2012-01189-SC-R11-CD, 2015 WL 603158, at *4 (Tenn. Feb. 13, 2015).

## III. Analysis

The sole issue is whether the Defendant's convictions for attempted voluntary manslaughter and aggravated assault should be merged based upon the double jeopardy

principles set out in <u>Denton</u>.[1]

The Federal Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Tennessee's Double Jeopardy Clause provides "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb." Tenn. Const. art I, § 10. These provisions "protect[] against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." <u>Monge v. California</u>, 524 U.S. 721, 727-28 (1998); <u>State v. Smith</u>, 436 S.W.3d 751, 766 (Tenn. 2014). In <u>Denton</u>, this Court adopted a four-factor test for determining whether multiple convictions were for "the same offense" such that they had to be merged pursuant to the Double Jeopardy Clause of the Tennessee Constitution: (1) whether, viewing the statutory elements "in the abstract" in accordance with <u>Blockburger v. United States</u>, 284 U.S. 299 (1932), each offense includes an element which the other does not; (2) whether the same evidence was used to establish the offenses; (3) whether the offenses involved multiple victims or discrete acts; and (4) whether the statutes serve the same purpose. <u>Denton</u>, 938 S.W.2d at 381. No single factor of the <u>Denton</u> test was determinative; rather, the factors were to "be weighed and considered in relation to each other." <u>Id.</u>

More recently, in <u>Watkins</u>, this Court abandoned the four-part test from <u>Denton</u>, holding that a double jeopardy claim by a defendant who has been convicted of multiple crimes under different statutes must be evaluated pursuant to the same-elements test established by the U.S. Supreme Court in <u>Blockburger</u>. <u>Watkins</u>, 362 S.W.3d at 556.[2] Consistent with <u>Blockburger</u>, <u>Watkins</u> first and foremost requires a determination of legislative intent: if the General Assembly has clearly indicated that multiple punishments should or should not be permitted, the inquiry ends there. <u>Id.</u> at 556. When there is no clear indication of legislative intent, the next consideration is whether the convictions arise from the same act or transaction; if they arise from different transactions, then no double jeopardy violation has occurred. <u>Id.</u> If the convictions do arise from the same transaction, the question becomes whether each offense includes an element that the other does not—if so, there is a presumption that the General Assembly

---

[1] While the State asserts that the Defendant waived this issue by failing to properly present it before the Court of Criminal Appeals, we have chosen to exercise our discretion to address the issue on the merits. <u>See</u> Tenn. R. App. P. 13(b).

[2] Claims "in which defendants who have been convicted of multiple criminal offenses under <u>different</u> statutes allege that the convictions violate double jeopardy" are commonly referred to as "multiple description" claims. <u>Id.</u> at 544. In contrast, "unit-of-prosecution" claims "arise when defendants who have been convicted of multiple violations of the <u>same</u> statute assert that the multiple convictions are for the 'same offense.'" <u>Id.</u> at 543. The <u>Blockburger</u> test applies only to multiple description claims, <u>id.</u> at 543-44, such as the claim at issue here.

intended to permit multiple punishments; if not, the presumption is that multiple punishments are not permitted.  Id. at 557.  While these steps are typically determinative, Watkins also allows for consideration of whether the presumption for or against multiple punishments is contradicted by "other evidence of legislative intent, including the purposes and history of the relevant statutes."  Id.

In this instance, a majority of the Court of Criminal Appeals panel applied the Blockburger test, as directed by Watkins, and reached the following conclusions: (1) the convictions arose from "one continuous course of conduct"; (2) nevertheless, the offenses are not multiplicitous "because aggravated assault and attempted voluntary manslaughter each require proof of a fact not required in proving the other"; and (3) "legislative intent does not preclude the dual convictions."  Feaster, 2014 WL 2170096, at *11.  Thus, the majority found no violation of double jeopardy and held that a merger of the two offenses was not required.  Id.

While the State maintains that the majority properly applied Watkins, the Defendant, adopting the rationale of the dissent, argues that the rule in Denton should apply and would produce a different result.  Because his offenses occurred before Watkins was decided, the Defendant contends that evaluating the double jeopardy issue pursuant to Watkins violates his right to due process.  The Defendant relies upon a series of U.S. Supreme Court decisions delineating certain "limitations on *ex post facto* judicial decision-making" which are "inherent in the notion of due process."  Rogers v. Tennessee, 532 U.S. 451, 456 (2001) (citing Bouie v. City of Columbia, 378 U.S. 347 (1964)).

In Bouie, the U.S. Supreme Court considered the South Carolina Supreme Court's retroactive application of a newly adopted interpretation of a criminal trespass statute. 378 U.S. at 349 & n.1.  Although prior South Carolina cases had uniformly required as an element of the offense that defendants receive notice that entry is prohibited, the South Carolina court upheld the convictions of Bouie and his co-defendant by construing the statute to extend to patrons of a business who did not receive notice prior to entry, but refused to leave when asked to do so.  Id. at 350 & n.2.  Relying upon the basic principle of due process that a criminal statute must provide "fair warning," the U.S. Supreme Court ruled that "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect."  Id. at 354 (quoting Jerome Hall, General Principles of Criminal Law 61 (2d ed. 1960)).  The Court held that the South Carolina court's retroactive application of its new construction violated due process because the construction had no support in the law in effect at the time of the offenses.  Id. at 355-56.

The U.S. Supreme Court applied the same principle in <u>Marks v. United States</u>, which involved the application of a federal statute prohibiting the transportation of obscene materials. 430 U.S. 188, 189 (1977). At the time of the alleged misconduct, obscenity statutes were subject to the stringent First Amendment standard set out in <u>Memoirs v. Massachusetts</u>, which provided constitutional protection unless the prosecution could show that the materials were "utterly without redeeming social value." 383 U.S. 413, 418 (1966) (plurality opinion). Later, in <u>Miller v. California</u>, 413 U.S. 15, 24 (1973), the Court rejected the <u>Memoirs</u> test in favor of a less restrictive standard,[3] thereby "expand[ing] criminal liability" under the obscenity statutes. <u>Marks</u>, 430 U.S. at 193-94. Because the new constitutional interpretation had "the same [effect] as the new construction in <u>Bouie</u>," the Court held "that the Due Process Clause preclude[d] the application . . . of the standards announced in <u>Miller</u>" as to any offense that predated <u>Miller</u>. <u>Id.</u> at 195-96.

In <u>State v. Rogers</u>, this Court abolished the year-and-a-day rule, a common law doctrine which barred a murder conviction "unless the victim died within a year and one day of the injury." 992 S.W.2d 393, 396 (Tenn. 1999), <u>aff'd</u>, 532 U.S. 451 (2001). This Court concluded that the ruling could apply retroactively without violating due process because "the judicial abrogation of the year-and-a-day rule [was] not an unexpected judicial construction that [was] indefensible by reference to prior law." <u>Id.</u> at 402. The U.S. Supreme Court, which affirmed, made the following observations:

> [T]he Tennessee court's abolition of the year and a day rule was not unexpected and indefensible. The year and a day rule is widely viewed as an outdated relic of the common law. . . .
>
> . . . [T]he year and a day rule has been legislatively or judicially abolished in the vast majority of jurisdictions recently to have addressed the issue. . . . Due process, of course, does not require a person to apprise himself of the common law of all 50 States in order to guarantee that his actions will not subject him to punishment in light of a developing trend in the law that has not yet made its way to his State. At the same time,

---

[3] The standard set out in <u>Miller</u> consists of the following factors:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24 (citations and quotation marks omitted).

however, the fact that a vast number of jurisdictions have abolished a rule that has so clearly outlived its purpose is surely relevant to whether the abolition of the rule in a particular case can be said to be unexpected and indefensible by reference to the law as it then existed.

. . . .

There is, in short, nothing to indicate that the Tennessee court's abolition of the rule in petitioner's case represented an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect. Far from a marked and unpredictable departure from prior precedent, the court's decision was a routine exercise of common law decisionmaking in which the court brought the law into conformity with reason and common sense.

Rogers, 532 U.S. at 462-64, 466-67; see also Metrish v. Lancaster, 133 S. Ct. 1781, 1785 (2013) (concluding that the Michigan Supreme Court's retroactive abrogation of the defense of diminished capacity did not entitle the petitioner to federal habeas corpus relief).

The State first argues that the Defendant is not entitled to relief because Watkins, which altered our constitutional double jeopardy analysis, did not modify the construction of a criminal statute, as occurred in Bouie, 378 U.S. at 350, or alter "a common law doctrine of criminal law," as occurred in Rogers, 532 U.S. at 462. We find this argument unpersuasive because in Marks, the U.S. Supreme Court recognized that the retroactive application of a constitutional interpretation may violate due process. 430 U.S. at 195-96. The significant question, therefore, is whether our ruling in Watkins qualifies as either indefensible or unexpected by reference to the law as it then existed.

In 1975, well before Denton, a member of this Court described the multiple-punishment issue in Tennessee as a "vexatious and recurring problem," observing that our courts had struggled to craft a consistent approach "both as to the rules and as to their application." State v. Black, 524 S.W.2d 913, 923 (Tenn. 1975) (Henry, J., dissenting). The four-factor test in Denton failed to remedy these problems. In Watkins, we first confirmed that the rule in Denton had not been adopted in any other jurisdiction, 362 S.W.3d at 547 & n.28, and further observed as follows:

Unfortunately, the Denton test has not successfully resolved the "vexatious and recurring" questions regarding this Court's double jeopardy analysis. Not only has its application produced inconsistent results that defy reconciliation, the test itself suffers from analytical defects and an

incongruity with the key constitutional consideration in multiple punishment cases—that of ascertaining legislative intent. Furthermore, . . . the Denton test fails to focus sufficiently upon the distinct categories of multiple punishment claims—unit of prosecution and multiple description. Finally, the Denton test rests upon an uncertain constitutional foundation.

Id. at 549 (footnote omitted). Because of "the analytical shortcomings of the Denton test and the lack of any textual or historical basis suggesting that the Double Jeopardy Clause of the Tennessee Constitution mandates its adoption," this Court abandoned the test in favor of Blockburger, which by that time had been adopted by both "the federal courts and the vast majority of our sister states." Id. at 556.

Our rejection of the Denton test and adoption of the federal standard in Watkins cannot be classified as "unexpected and indefensible by reference to the law as it then existed." Rogers, 532 U.S. at 464; see also Bouie, 378 U.S. at 354. In contrast to the unique test adopted by this Court in Denton, the Blockburger test had stood as the federal double jeopardy standard since 1932 and, by the time of our ruling in Watkins, had been adopted by an overwhelming number of state courts. Cf. Rogers, 532 U.S. at 462-63 (holding that this Court's abolition of the year-and-a-day rule was not unexpected or indefensible where the rule had been rejected "in the vast majority of jurisdictions"). This Court's adoption of the Blockburger test—which had previously been a component of the Denton test—brought our law into conformity with a majority of other jurisdictions and did not constitute "the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect." Id. Accordingly, the retroactive application of Watkins does not offend due process, and the Defendant is not entitled to have his double jeopardy claim evaluated pursuant to the Denton test.[4]

Having determined that the Defendant's double jeopardy claim is governed by Watkins, the Defendant is not entitled to relief. Although the Defendant's convictions for attempted voluntary manslaughter and aggravated assault arose out of the same incident, each of those offenses contains numerous elements that the other does not. Compare Tenn. Code Ann. § 39-13-211(a) ("Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner."), and id. § 39-12-101(a)(3)

---

[4] Although we have not previously addressed the specific issue before us in this case, we note that both this Court and the Court of Criminal Appeals have consistently applied Watkins in cases involving offenses that predated that decision—including Watkins itself. See, e.g., State v. Hogg, 448 S.W.3d 877, 886-87 (Tenn. 2014); State v. Cross, 362 S.W.3d 512, 519-22 (Tenn. 2012) (decided on the same day as Watkins); State v. Dockery, No. W2012-01024-CCA-R3-CD, 2014 WL 172379, at *13 (Tenn. Crim. App. Jan. 15, 2014).

(defining criminal attempt, in pertinent part, as "[acting] with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense"), with id. §§ 39-13-101(a)(1), -102(a)(1) (defining aggravated assault, in pertinent part, as intentionally causing serious bodily injury to another). As to the final component of the Blockburger test, there is no evidence that the General Assembly intended to prohibit multiple punishments in circumstances such as these. In summary, the applicable principles of double jeopardy do not preclude the dual convictions.

## IV. Conclusion

Because the Defendant is not entitled to the merger of his convictions for aggravated assault and attempted voluntary manslaughter, the judgments of the trial court and the Court of Criminal Appeals are affirmed. It appearing that the Defendant is indigent, costs are taxed to the State.

_____
GARY R. WADE, JUSTICE