IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 26, 2018

## TERRENCE JUSTIN FEASTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 108205    Steve Sword, Judge**

_____

### No. E2018-00193-CCA-R3-PC

_____

The petitioner, Terrence Justin Feaster, appeals the denial of his petition for post-conviction relief, which petition challenged his 2012 Knox County Criminal Court jury convictions of attempted voluntary manslaughter, aggravated assault, and false imprisonment. In this appeal, the petitioner contends that he was deprived of the effective assistance of counsel on appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Terrence Justin Feaster.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Knox County Criminal Court jury convicted the petitioner of attempted voluntary manslaughter, aggravated assault, and false imprisonment related to an incident involving his girlfriend. Our supreme court summarized the facts of the case:

> At trial, the State's proof established that the [petitioner] had been living at the victim's residence for approximately two weeks before she drove him to a sports bar on the night of May 26, 2010. After an hour or so, the [petitioner] became "really drunk," and so the victim drove him back to her residence. According to the victim, when she

went to her bathroom, the [petitioner] broke through the door and "just started beating [her]." She testified that he then dragged her into the bedroom, where he tied her feet to an entertainment center and threatened to kill her if she moved. The victim recalled that she momentarily lost consciousness, and when she awoke, she was able to free herself and run to the residence of a neighbor, who called 911. The police officers who responded to the scene found significant amounts of blood in the bathroom, bedroom, dining room, and living room.

After being transported by ambulance to a hospital, the victim remained unconscious for the next three days. Dr. William Snyder Jr., the victim's treating neurosurgeon, diagnosed a temporal skull fracture, a dislocation of the jaw, several lacerations on the forehead and scalp, nasal fractures, bilateral pulmonary contusions, and soft-tissue injuries to the arms. . . . The victim denied that she and the [petitioner] had argued prior to the assault or that she had threatened him with a gun.

The [petitioner] testified that he and the victim met a man called "D" at the bar. When the victim left the bar with "D," the [petitioner] followed her outside and found her "kissing on" him. The [petitioner] claimed that he became so angry and embarrassed that he began walking home. He contended that the victim followed, driving his vehicle, and persuaded him to get inside. He recalled that they began to argue and, after they arrived at the victim's residence, she initiated the altercation with two or three punches to his face. According to the [petitioner], when he retaliated by hitting her in the nose, the victim pointed a pistol in his direction. He asserted that he "grabbed the pistol from her," and when she continued to attack him, he used it to strike her in the head, eventually knocking her to the bathroom floor.

The [petitioner] claimed that the victim then asked him to remove all the drugs and guns from the property and to call 911. The [petitioner] maintained that he drove to the residence of a friend, who agreed to call 911 but refused to accept the drugs and two guns that he had brought with him.

-2-

*State v. Feaster*, 466 S.W.3d 80, 82-83 (Tenn. 2015). The trial court imposed sentences of 12 years for the petitioner's conviction of attempted voluntary manslaughter, 14 years for the conviction of aggravated assault, and 11 months and 29 days for the conviction of false imprisonment and ordered all the sentences to be served consecutively. *See id.* at 83.

On May 31, 2016, the petitioner filed a timely petition for post-conviction relief, alleging, among other things, that he was deprived of the effective assistance of counsel. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, in which petition he claimed that his counsel performed deficiently by failing to challenge the consecutive alignment of his sentences on direct appeal.

At the November 30, 2017 evidentiary hearing, the petitioner did not claim entitlement to a new trial and instead asked only for a new sentencing hearing. The petitioner did not testify.

Counsel, who represented the petitioner at trial and during the first tier of his direct appeal, testified that he did not raise the sentence alignment issue because he "was focused on the argument that the counts should merge." Counsel added that he thought the trial judge had "said what he needed to say on the record" and that it would have been difficult to have the judge's ruling overturned under an abuse of discretion standard of review. Counsel recalled that the petitioner's lengthy criminal history presented "a tough burden to overcome" at the sentencing hearing. Counsel said that he believed the trial court's findings with regard to the petitioner's extensive criminal history and his having been a dangerous offender were supported by the record.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In its order denying post-conviction relief, the court accredited counsel's testimony that he elected not to pursue the issue of consecutive sentencing because "he did not think a challenge on consecutive sentencing would be successful" and deemed counsel's decision "reasonable based upon the deference to be given a judge's discretion on this matter and the record in this case."

In this appeal, the petitioner reiterates his claim that his counsel should have raised the issue of consecutive sentence alignment on direct appeal and that counsel's failure to do so prejudiced the outcome of his appeal. The State asserts that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"Counsel is not constitutionally required to argue every issue on appeal," *State v. Matson*, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (quoting *State v.*

*Swanson*, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)), and, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues," *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). The determination to raise or forego an issue on appeal is a matter "generally within appellate counsel's sound discretion," *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citing *Jones*, 463 U.S. at 751; *King v. State*, 989 S.W.2d 319, 334 (Tenn. 1999); *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993)), and, as a result, counsel's decision in this regard "should be given considerable deference" on appeal, *Carpenter*, 126 S.W.3d at 887 (citing *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995); *Strickland*, 466 U.S. at 689).

This court must review the merits of the omitted issue to determine whether counsel's failure to present the issue on appeal equates to ineffective assistance. *See Carpenter*, 126 S.W.3d at 887. "[U]nless the omitted issue has some merit," the petitioner can establish neither that his counsel performed deficiently nor that he was prejudiced by the omission. *Id.*

At the evidentiary hearing, counsel testified that he deliberately chose to forego the sentence alignment issue in favor of the merger issue because he did not believe the sentencing issue would be successful on appeal. In our view, counsel's decision was reasonable. On appeal, the reviewing court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). The presentence report established that the 34-year-old petitioner had an extensive criminal history that dated back to 1994, when he was convicted at age 17 of "assault and battery of high and aggravated nature" in Chester County, South Carolina. His record included three prior convictions of assault and one conviction of child endangerment in addition to six prior convictions of drug possession and convictions of shoplifting and weapons possession. The petitioner managed over the course of his life to obtain convictions in South Carolina, Georgia, Texas, and Tennessee. Regardless of the propriety of the trial court's findings that the petitioner was a professional criminal and a dangerous offender, the record fully supports the trial court's conclusion that the petitioner was "an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2); *see also State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) ("Extensive criminal history alone will support consecutive sentencing."). In consequence, any challenge to the consecutive alignment of the petitioner's sentences would not have been successful on appeal.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE