IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 4, 2024

**STATE OF TENNESSEE v. SHAWN FOUTAINE SHAW**

**Appeal from the Circuit Court for Madison County**
**No. 22-135    Donald H. Allen, Judge**

_____

**No. W2024-00138-CCA-R3-CD**

_____

Following a jury trial, the Defendant, Shawn Foutaine Shaw, was convicted of first degree premeditated murder, first degree felony murder, especially aggravated kidnapping, and aggravated assault. On appeal, the Defendant claims that his convictions for especially aggravated kidnapping and aggravated assault violate the prohibition against double jeopardy. He also raises an evidentiary issue regarding the testimony of a witness at trial. After a thorough review of the record, we remand the case to the trial court for entry of an amended judgment in count 2 and corrected judgments in counts 3 through 6. In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Case Remanded**

KYLE A. HIXSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Shawn Foutaine Shaw, Mountain City, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Joshua B. Dougan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.    FACTUAL AND PROCEDURAL HISTORY

This case pertains to the Defendant's involvement in the death of the victim, Patti Hathcock, and his related conduct following her death on May 27, 2021. The Defendant was indicted by a Madison County grand jury on January 31, 2022, for first degree

premeditated murder, first degree felony murder, especially aggravated kidnapping, aggravated assault, domestic assault, and tampering with evidence. *See* Tenn. Code Ann. §§ 39-13-102, -111, -202, -305; -16-503. On March 30, 2023, the Defendant pleaded guilty to domestic assault and tampering with evidence. A three-day jury trial on the remaining four counts commenced on July 18, 2023. The Defendant, having previously waived his right to counsel, represented himself at trial.

The proof introduced at trial showed that the Defendant and the victim were in a romantic relationship and that on May 27, 2021, an argument between them became physical. While driving the victim's vehicle, the Defendant repeatedly punched the victim in the face, used her seatbelt to confine her to the vehicle, and proceeded to strangle her. Upon stopping at an isolated location, the Defendant continued the assault. He struck the victim's head against the door frame of the vehicle, tied her hands to one ankle behind her back using a cell phone charging cable, kicked her multiple times on her head and chest, and strangled her until she lost consciousness. Once the victim had succumbed to her injuries, the Defendant wrapped a shirt and jumper cables around the area of the victim's mouth and neck, burned her fingertips and face, and left her body at the isolated location. The Defendant then left the scene in the victim's vehicle with the victim's cell phone in his possession.

That same evening, the Defendant threw the victim's cell phone into the woods and parked the victim's vehicle in an unlit section of a local park. The Defendant called an acquaintance, Lavundra McFadden-Ware, and she agreed to pick him up at the park. After the Defendant entered Ms. McFadden-Ware's vehicle, she saw that the Defendant was "covered in blood." Ms. McFadden-Ware drove the Defendant to her apartment, where he confessed to killing the victim. Later that evening, Ms. McFadden-Ware drove the Defendant to a second isolated location, where he tossed his bloody clothing out of the window of the moving vehicle.

The next day, the Defendant also confessed to killing the victim to his friend, Cory Winfield. When the victim was reported missing, both Ms. McFadden-Ware and Mr. Winfield reported their interactions with the Defendant to police. Investigators discovered the victim's car and observed large amounts of blood on the interior of the vehicle. Investigators later retrieved the bloody clothing the Defendant had thrown from Ms. McFadden-Ware's car. Once law enforcement confronted the Defendant with this information, the Defendant admitted his involvement in the victim's death and led investigators to her body.

At trial, Ms. McFadden-Ware testified on direct examination that she had not initially been entirely truthful with law enforcement about the extent of her knowledge of the Defendant's conduct on May 27, 2021, or where she had picked him up that evening. She further testified that she gave a full and truthful statement to law enforcement in the days that followed and described her role in leading the investigators to the Defendant's discarded clothing. The Defendant repeatedly "objected" during Ms. McFadden-Ware's testimony by interjecting his assertion that she was lying. On cross-examination, after a lengthy discourse between the trial court and the parties out of the presence of the jury, the trial court allowed the Defendant to introduce into evidence the video and audio recordings of two of Ms. McFadden-Ware's interviews with law enforcement.

The jury found the Defendant guilty as charged on all counts and, in a subsequent phase of the trial, imposed a sentence of life without the possibility of parole on the murder convictions. The trial court accepted the jury's verdict and imposed sentences consistent with the jury's findings. A sentencing hearing on the remaining trial counts was conducted on September 18, 2023, and the trial court imposed a twenty-five-year sentence on the especially aggravated kidnapping conviction and a ten-year sentence on the aggravated assault conviction. These sentences were ordered to run concurrently with one another but consecutively to the Defendant's sentences of life without the possibility of parole. Following the Defendant's filing of three motions for new trial, a hearing ensued on December 27, 2023. Thereafter, the trial court entered a written order denying the motions on December 28, 2023.

The Defendant filed a timely notice of appeal.

## II.    ANALYSIS

### A.    Double Jeopardy

The Defendant challenges his dual convictions for especially aggravated kidnapping and aggravated assault on the grounds that the convictions violate the prohibition against double jeopardy. Specifically, the Defendant contends that he cannot be convicted for both offenses because both contain within their essential elements proof of "serious bodily injury." He concludes that this constitutes a double jeopardy violation because the offenses occurred during the same criminal episode and involved the same victim. The State contends, and we agree, that the Defendant's dual convictions for these offenses do not violate double jeopardy principles.

The Fifth Amendment to the United States Constitution provides, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" The Double Jeopardy Clause of the federal constitution "represents a fundamental ideal in our constitutional heritage" and is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). Under article I, section 10 of the Tennessee Constitution, "no person shall, for the same offence, be twice put in jeopardy of life or limb." These provisions "protect[] against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28, (1998); *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014).

Our supreme court has observed "in single prosecutions, 'multiple punishment' challenges ordinarily fall into one of two categories: unit-of-prosecution claims and multiple description claims." *State v. Allison*, 618 S.W.3d 24, 43 (Tenn. 2021) (citing *State v. Watkins*, 362 S.W.3d 530, 543 (Tenn. 2012)). This case presents a multiple description claim, which arises when a defendant has been convicted of violating two different statutes. "Whether multiple convictions violate double jeopardy is a mixed question of law and fact, which we review de novo without any presumption of correctness." *Watkins*, 362 S.W.3d at 539 (citation omitted).

In *Watkins*, the Tennessee Supreme Court adopted the same-elements test set forth in *United States v. Blockburger*, 284 U.S. 299 (1932), for determining whether "multiple convictions under different statutes violate the state constitutional double jeopardy prohibition against multiple punishment." 362 S.W.3d at 556. First, Tennessee courts must focus on ascertaining whether the General Assembly has expressed an intent to permit or preclude multiple punishments for multiple convictions. *Id*. When the General Assembly's intent is clearly expressed, the inquiry stops, and no further analysis is required. *Id*. "Where the General Assembly's intent is not clearly expressed, the *Blockburger* test should be applied to determine whether multiple convictions under different statutes punish the same offense." *Id*. (internal quotation marks omitted). The "threshold question" under the *Blockburger* test is "whether the convictions arise from the same act or transaction." *Id*. "This threshold question should be answered by reference to the charging instrument and the relevant statutory provisions." *Id*. Courts should also consider "whether the charges arise from discrete acts or involve multiple victims." *Id*. If the convictions arise from the same act or transaction,

> the second step of the *Blockburger* test requires courts to examine the statutory elements of the offenses. If the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume

- 4 -

that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do not define the "same offense" for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

*Id*. at 557.

In this instance, the General Assembly has not "clearly expressed" that it intended to allow multiple punishments for the offenses of especially aggravated kidnapping and aggravated assault. *See Watkins*, 362 S.W.3d at 556. Therefore, further analysis under *Blockburger* is necessary. *See id*. Regarding the first step of *Blockburger*, the Defendant contends, and the State does not dispute, that the offenses at issue occurred during the same act or transaction involving a single victim. We agree and proceed to the second step of the *Blockburger* test by examining the elements of the offenses.

As pertinent to this case, the Code defines especially aggravated kidnapping as false imprisonment "[w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-305(a)(4). False imprisonment occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id*. § -302(a). Additionally, "'[u]nlawful' means, with respect to removal or confinement, one that is accomplished by force, threat or fraud[.]" *Id.* § -301(15) (renumbered to subsection (15) effective July 10, 2014).

In addition, aggravated assault occurs here when a person, with the requisite mental state, "commits an assault" and the assault "[r]esults in serious bodily injury to another." *Id*. § -102(a)(1)(A)(i). A person commits an assault in this instance by "caus[ing] bodily injury to another[.]" *Id*. § -101(a)(1).

Contrary to the Defendant's assertion that the inclusion of "serious bodily injury" in the elements of both offenses violates the prohibition against double jeopardy, the *Blockburger* test focuses on whether each offense contains one or more elements that *differ* from one another. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test . . . is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304 (citations omitted). Further, "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal *or conviction* under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* (emphasis added) (citations omitted). Accordingly, no double jeopardy

violation has occurred when "each offense includes an element that the other does not." *State v. Feaster*, 466 S.W.3d 80, 84 (Tenn. 2015) (affirming convictions for attempted voluntary manslaughter and aggravated assault that arose from "one continuous course of conduct" because the offenses each required proof of a fact not required to prove the other (citing *Watkins*, 362 S.W.3d at 557)).

In this case, the especially aggravated kidnapping statute includes an element absent from the aggravated assault statute—proof of removal or confinement. The pivotal question then becomes whether the aggravated assault statute, as applied in this case, requires additional proof that the especially aggravated kidnapping statute does not.

To sustain a conviction for aggravated assault under the statute, the State must not only prove that the victim "suffer[ed] serious bodily injury" as required by the especially aggravated kidnapping statute, but that the serious bodily injury was the result of an assault committed by the Defendant against the victim. Tenn. Code Ann. § 39-13-102(a)(1)(A)(i); -305(a)(4). The assault statute, which is explicitly incorporated therein, requires proof that the Defendant *caused* bodily injury to the victim, as charged to the jury in this case.[1] *Id*. § -101(a)(1). Therefore, as to the offense of aggravated assault, the State was required to prove that the Defendant *caused* injury to the victim and not merely that the victim *suffered* serious bodily injury. As such, the aggravated assault conviction required proof of the Defendant's direct involvement in causing the injury, which is not required to prove especially aggravated kidnapping, where the victim may merely suffer serious bodily injury as a result of the removal or confinement.

Under prior law, this court held double jeopardy principles were not implicated by dual convictions for especially aggravated kidnapping and aggravated assault where both convictions relied on the presence of serious bodily injury. *See State v. Gibson*, No. M2005-01422-CCA-R3-CD, 2006 WL 770460, at *13 (Tenn. Crim. App. Mar. 24, 2006). The *Gibson* court explained,

> These two statutory offenses contain separate and distinct elements. The kidnapping offense, as relevant to this case, involves false imprisonment where the victim *suffers* serious bodily injury. Conversely, the assault offense requires that the perpetrator of the assault *cause* the serious bodily injury. This makes the statutory elements of the offenses dissimilar.

---

[1] We note that the jury was not instructed on any alternative forms of assault in this case. As such, those alternate components of the assault statute do not factor to into our analysis.

*Id.*; *see also Hubbard v. State*, No. W2014-01716-CCA-R3-PC, 2015 WL 5683092, at *8 (Tenn. Crim. App. Sept. 25, 2015) (citing *Gibson* and rejecting a double jeopardy challenge as to the initial charges of especially aggravated kidnapping and aggravated assault both premised on serious bodily injury on the same grounds); *cf. State v. Tittle*, No. M2016-02006-CCA-R3-CD, 2017 WL 4773427, at *9 (Tenn. Crim. App. Oct. 23, 2017) (rejecting a double jeopardy challenge as to convictions for attempted aggravated kidnapping with a deadly weapon and aggravated assault by fear on the same grounds).

We recognize that *Gibson* and *Hubbard* involved analyses of a prior version of the aggravated assault statute. At the time of the offenses in *Gibson* and *Hubbard*, a person committed aggravated assault who "intentionally or knowingly commit[ted] an assault as defined in § 39-13-101 and . . . *cause[d]* serious bodily injury to another[.]" Tenn. Code Ann. § 39-13-102(a)(1)(A) (Repl. 2010) (emphasis added). The offenses at issue in the present case involve the aggravated assault statute as it existed following its 2013 amendment, wherein the General Assembly removed the term "causes" and instead defined aggravated assault as an assault that "*[r]esults* in serious bodily injury to another." *See* 2013 Tenn. Pub. Acts, ch. 461, § 2 (emphasis added). The underlying rationale in *Gibson* and *Hubbard* remains intact and applicable to this case, however, because an aggravated assault conviction still requires a causation element by virtue of its incorporation of the simple assault statute. Therefore, although both offenses require the presence of a victim's serious bodily injury, the especially aggravated kidnapping statute requires additional proof of removal or confinement, while the aggravated assault statute requires additional proof that the Defendant caused bodily injury to the victim. As such, the Defendant is not entitled to relief on this issue.

### B. Evidentiary Claim Regarding Ms. McFadden-Ware's Testimony

The Defendant attempts to raise an evidentiary issue on appeal regarding the testimony of Ms. McFadden-Ware at trial, but due to the largely incoherent nature of his brief, we are unable to determine precisely what issue the Defendant is attempting to raise or what relief he seeks. Regardless, he failed to include any issue related to Ms. McFadden-Ware's testimony in his three motions for new trial. Thus, the issue is waived. *See* Tenn. R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issue[] will be treated as waived.").

While the Defendant contends in his reply brief that his inclusion of this issue in a pretrial motion to suppress preserved the matter for appellate review, this assertion is incorrect. It is true that, as a threshold matter, "to properly preserve an evidentiary issue

for review, a party must raise a timely and specific objection in the trial court either at or before trial." *State v. Reynolds*, 635 S.W.3d 893, 926 (Tenn. 2021) (citations omitted). However, the preservation requirement does not end there: "[*I*]*n addition* to raising a timely and specific objection, a party *must raise the issue in a motion for a new trial* in order to preserve it for appellate review." *Id.* (emphases added) (citations omitted). As such, the issue is waived.

### C.      Errors in the Judgment Forms

While we affirm the judgments of the trial court, remand is necessary to correct the following errors in the uniform judgment documents.

First, an amended judgment form for count 2 should be entered to reflect that it merges into count 1 for a single conviction of first degree murder. "Merger . . . is required when a jury returns guilty verdicts on two counts that represent alternative theories of the same offense." *State v. Berry*, 503 S.W.3d 360, 362 (Tenn. 2015) (citations omitted). In its order denying the Defendant's motion for new trial, the trial court noted that the State may charge alternative theories of guilt but neglected to address merger of the convictions. Under these circumstances, the "dual guilty verdicts must merge into a single conviction[.]" *See id.*

Second, corrected judgment forms should be entered for counts 3 through 6 to remove the "Life w/out Parole" notation, as none of these counts pertain to the Defendant's first degree murder conviction.

Finally, the uniform judgment document in count 6 should also be corrected to remove the notations of "1st Degree Murder" and "Reform Act 1989."

### III.    CONCLUSION

In consideration of the foregoing, we affirm the judgments of the trial court but remand for entry of amended and corrected judgment forms consistent with this opinion.

_____
KYLE A. HIXSON, JUDGE

- 8 -